IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Christine A. Boineau, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:04-22765-HMH-RSC |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the court with the Report of United States Magistrate Robert S. Carr, made in accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 DSC.[1] Christine A. Boineau ("Boineau") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. In his Report, Magistrate Judge Carr recommends reversing the Commissioner's decision and remanding the case under sentence four of 42 U.S.C. § 405(g) to the Commissioner to take appropriate action in awarding Boineau benefits. For the reasons stated below, the court adopts the Magistrate Judge's Report, reverses the Commissioner's decision, and remands the case to the Commissioner to award Boineau benefits.

---

    [1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 14-26), and summarized as follows. At the time of the hearing before the ALJ, Boineau was a thirty-three-year-old woman with a high school education. (Id. at 15.) Her past employment includes positions as a grocery store bagger, plastic plant operator, phone operator, aide, counter helper, shoe salesperson, telemarketer, candy maker, housekeeper, warehouse worker, "loss prevention/office supervisor," "customer service/dispatcher," child support specialist, fundraiser, cook, and administrative assistant. (Id.) She alleges disability due to arthralgias and fibromyalgia. (Id.)

On June 20, 2002, Boineau filed an application for DIB. (Id. at 55-57.) The application was denied initially and on reconsideration. On June 25, 2004, after a hearing on December 10, 2003, the ALJ found that Boineau was able to perform past relevant work and was not disabled. (R. at 15.) On September 14, 2004, the Appeals Council denied Boineau's request for review. (Id. at 5.) Boineau filed the instant action on October 25, 2004. The Magistrate Judge recommends reversing the decision of the Commissioner and remanding the case for a determination of benefits. The Commissioner filed objections to the Magistrate Judge's Report, and Boineau replied in response to the Commissioner's objections.

## II. THE REPORT AND RECOMMENDATION

The Magistrate Judge recommends reversing the Commissioner's decision and awarding disability benefits to Boineau. In doing so, the Magistrate Judge states that the ALJ erred in discrediting the opinion of Dr. Gregory Niemer ("Dr. Niemer"), Boineau's primary care physician. The ALJ rejected Dr. Niemer's opinion that Boineau would only be able to work four hours a day,

three sitting and one standing or walking, and would be absent from work four days a month due to her impairments and treatment. (Rept. at 6.) The Magistrate Judge concluded that the ALJ had mischaracterized Dr. Niemer's treatment of Boineau as being "short," and wrongly concluded that Dr. Niemer's opinion was inconsistent with the other substantial evidence in the case record, when, in fact, Dr. Niemer's opinion was consistent with the other doctors who treated Boineau. Further, the Magistrate Judge noted that the ALJ ignored 20 C.F.R. § 404.1527, which sets forth the hierarchy the ALJ must use in weighing medical opinions. The ALJ gave the greatest weight to two physicians with the lowest position on the hierarchy, non-examining physicians who are not specialists, instead of the treating physician, a specialist, whose opinion should have been given the most weight. The Commissioner objects to these conclusions.

### III. DISCUSSION OF THE LAW

#### A.  Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the [Commissioner] [only] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990). If the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it. See id.

### B. Objections

The Commissioner objects to the Magistrate Judge's determination that the ALJ improperly discounted the opinion of Dr. Niemer. The Commissioner argues the ALJ's determination with regard to Dr. Niemer was proper, asserting that the ALJ "specifically considered Dr. Niemer's opinion, which essentially amounted to an opinion that Plaintiff would be unable to perform full time work, and discounted it." (Obj. at 2.) The Commissioner notes that the ALJ properly considered how long Dr. Niemer treated Boineau, and discounted Dr. Niemer's opinion because, "Dr. Niemer's opinion was inconsistent with his own treatment records in which Plaintiff reported fair energy, better sleep, increased exercise, improved fatigue, and feeling comfortable." (Id. (internal quotation marks omitted).) Moreover, the Commissioner argues that it is the duty of the ALJ reviewing the case to resolve conflicts in the evidence, and that substantial evidence supports the ALJ's determination.

"[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. at 178.

The Commissioner claims the ALJ concluded that Dr. Niemer's opinion was not entitled to controlling weight because it was undermined by Dr. Niemer's own treatment records. A close

examination of the records to which the Commissioner refers reveals that the records are, in fact, consistent with Dr. Neimer's opinion.

The Commissioner refers to notes from Boineau's visits to Dr. Niemer on August 7, October 2, and October 17, 2003, in concluding that Boineau "reported fair energy, better sleep, increased exercise, improved fatigue, and feeling comfortable." (Obj. at 2; R. at 239-40, 243.) On August 7, 2003, Dr. Niemer noted that Boineau "appeared comfortable" and reported "better sleep" and "fair" energy. (R. at 243.) However, on the same report, Dr. Niemer also noted that Boineau suffered from increased back and hip pain, spasms and stiffness during the a.m. hours, and tenderness in sixteen of eighteen tender points. (Id.) He gave her an injection of medication. (Id.)

On October 2, 2003, Dr. Niemer noted that Boineau reported sleeping "ok" and "fair" energy, "increased exercise," and "better fatigue." (Id. at 240.) However, Dr. Niemer indicated that Boineau also experienced pain in her hips, stiffness in the morning, and tenderness in eighteen of eighteen tender points. (Id.) Finally, on October 17, Dr. Niemer wrote that Boineau suffered from "low[er] back cramping," poor energy levels, and tenderness in fourteen of eighteen tender points, and that he gave Boineau an injection of medication. (Id. at 239.)

Although Dr. Niemer noted that Boineau "appeared comfortable" during all three visits, Dr. Niemer also found that she had sixteen, eighteeen, and fourteen tender points at the three visits, respectively. Further, Dr. Niemer noted a.m. stiffness and pain and/or cramping at each visit. (R. at 239-40, 243.) Hence, while Boineau fluctuated with respect to variables such as energy level and sleep, Dr. Niemer consistently recorded pain and at least fourteen tender points on each visit.

5

The Social Security Administration ("SSA") defers to the American College of Rheumatologists' ("ACR") diagnostic criteria for fibromyalgia, which requires a history of bodily pain and tenderness in at least eleven of eighteen designated tender points.  See Social Security Ruling 99-2p, 64 Fed. Reg. 23380-03, at 23382 n.3 (Apr. 30, 1999); Frederick Wolfe et al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee, Arthritis and Rheumatism, Vol. 33, No.2, Feb. 1990, at 171.  The SSA considers fibromyalgia in conjunction with chronic fatigue syndrome ("CFS"), as some of the symptoms overlap:

> For purposes of Social Security disability evaluation, one or more of the following medical signs clinically documented over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFS:
> . . . .
> - Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points;

Social Security Ruling 99-2p, 64 Fed. Reg. 23380-03, at 23382 n.2 (Apr. 30, 1999).

"Individuals with impairments that fulfill the American College of Rheumatology criteria for [fibromyalgia syndrome] (which includes a minimum number of tender points) may also fulfill the criteria for CFS." Id. at 23382 n.3.  Dr. Niemer recorded pain and tenderness at sixteen of eighteen tender points on March 21, April 4, April 18, June 16, and August 7, eighteen of eighteen tender points on October 2, and fourteen of eighteen tender points on October 17.  (R. at 248, 249, 247, 245, 243, 240, 239.)  Dr. Niemer's notes recorded between March 21 and October 17, 2003, reflect that Boineau suffered tenderness at more than the

minimum number of tender points required under the ACR criteria for fibromyalgia.[2] Therefore, in conjunction with Boineau's history of pain, Dr. Niemer's notes are entirely consistent with his diagnosis of fibromyalgia, and, by treating Boineau for nine months and clinically documenting the fibromyalgia over that time period, Dr. Niemer examined Boineau for a sufficient amount of time to make that medical conclusion.

On December 9, 2003, Dr. Niemer also conducted a physical capacities evaluation of Boineau. Dr. Niemer concluded that Boineau could lift or carry "5 lbs. Occasionally to 1 lbs. [sic] frequently," could work three hours a day sitting and one hour a day standing or walking, and would likely miss four days of work each month. (R. at 238.) To support these conclusions, Dr. Niemer did not provide his medical basis on the physical capacities evaluation form. (Id.) However, when he gave his evaluation, he had been treating Boineau since early March, and his records substantiate Boineau's consistent pain resulting from her fibromyalgia.

In her objections, the Commissioner argues that Dr. Niemer's notes and the length of the treating relationship provided a substantial basis for the ALJ to reject Dr. Niemer's opinion. As detailed above, neither of those reasons provides a sufficient basis for rejecting Dr. Niemer's conclusion.

A review of the ALJ's decision further demonstrates that there was not substantial evidence supporting the ALJ's decision. The ALJ asserted that "Dr. Jacobs' examination of [Boineau] on October 11, 2002 contradicts Dr. Niemer's conclusions." (R. at 23.) However, Dr. Jacobs concluded, "In summary, this is a 31-year-old white female with what appears to be

---

[2]Boineau may be able to satisfy the criteria for CFS as well, but Boineau did not allege disability due to CFS. (R. at 15, 64.) The ALJ concluded that Boineau's "medically determinable severe impairments" are fibromyalgia and asthma. (R. at 20.)

7

fibromyalgia, [who] noted today is a very bad day, [and is] painful everywhere, . . . and the patient has documentation of treatment of chronic pain management for her condition." (R. at 193 (emphasis added).) Further, "She also apparently has asthmatic bronchitis, which is exacerbated during upper respiratory tract infection." (Id.) The ALJ ignored Dr. Jabobs' conclusion, notes concerning Boineau's joint pain, and observation that, though her "range of motion is fairly well preserved, . . . the palpation of all aspects of the lower extremities elicit[s] tearfulness and apparent pain." (Id. at 193.) Therefore, the court concludes that Dr. Jacobs' examination does not provide substantial evidence and a basis for the ALJ to disregard Dr. Niemer's opinion.

The only evidence which contravenes Dr. Niemer's opinion appears to be the opinions of the two state agency physicians. (R. at 195-202, 227-37.) However, as the Magistrate Judge set forth, the ALJ erred in assigning more weight to the conclusions of these physicians as opposed to the conclusions of Dr. Niemer, as Dr. Niemer was a specialist with a nine-month treating relationship with Boineau. See 20 C.F.R. § 404.1527(d). The state physicians did not examine Boineau, and there is no indication in the record that they were specialists. Thus, under applicable federal regulations, the ALJ erred by giving more weight to the opinions of the state's physicians than to Dr. Niemer's opinion. See 20 C.F.R. § 404.1527.

Further, the state physicians both concluded that Boineau had fibromyalgia, but provided little explanation for their conclusions that Boineau could work, sitting for six hours a day and standing for two hours a day. (R. at 196, 228.) The ALJ justified his reliance on their opinions by stating the following, "Although the State agency physicians did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that the opinions were grounded in the evidence of the case." (Id. at 23.) While the

8

physicians wrote notes below their conclusions, the notes do not specifically explain their conclusions concerning exertional limitations, such as why Boineau should be able to stand two hours a day.[3] Further, both physicians indicated that Dr. Niemer's physical capacities evaluation was not in the file, and thus offered no explanation of why their conclusions differed from his conclusions. (Id. at 201, 233.) In sum, although the state physicians came to a different conclusion about Boineau's work capacity, they did not explain why. For this reason as well as those discussed above, the ALJ erred in relying on the opinions of the state physicians, and their opinions do not provide substantial evidence undermining Dr. Niemer's opinion.

The court concludes that there was not substantial evidence inconsistent with Dr. Niemer's opinion. As such, the ALJ erred in rejecting Dr. Niemer's conclusions concerning Boineau's functional capacity, and the denial of benefits must be reversed. See Coffman, 829 F.2d at 518 (holding that, when there was no persuasive evidence undermining the attending physician's opinion, reversing the Commissioner's denial of benefits is appropriate.)

Courts are empowered by 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the Commissioner with or without remanding the case for a hearing. See Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). Although the Commissioner requested that the court remand the case for further proceedings if it could not affirm the ALJ's decision, the court finds that remanding the case would be fruitless, as there is no need for further hearings or development of the facts.

[3]One physician wrote a comment concerning what appears to be "pain management." (R. at 196.) Beyond being almost entirely illegible, the comment did not specifically address Boineau's exertional capacities and is consistent with Boineau's history of pain medication, including the injections noted on Dr. Niemer's reports. (R. at 239, 243.)

Therefore, the court adopts the Magistrate Judge's Report and Recommendation, reverses the Commissioner's decision, and remands the case for a determination of benefits.

Therefore, it is

**ORDERED** that the decision of the Commissioner is reversed and the case is remanded for a determination of benefits.

**IT IS SO ORDERED**.

                                                                            s/ Henry M. Herlong, Jr.
                                                                           United States District Judge

Greenville, South Carolina
July 27, 2005